| | | |
|---|---|---|
| Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL III | | |
| HÉCTOR GARRIGA MATOS<br><br>Recurrido<br><br>v.<br><br>ESTADO LIBRE ASOCIADO DE PUERTO RICO, NEGOCIADO DE LA POLICÍA DE PUERTO RICO<br><br>Peticionario | TA2026CE00042 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso núm.: SJ2024CR04401 (505) |

Panel integrado por su presidente el juez Hernández Sánchez, el juez Rivera Torres y el juez Marrero Guerrero.

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 12 de febrero de 2026.

Comparece ante este tribunal apelativo, la Oficina del Procurador General en representación del Gobierno de Puerto Rico, Negociado de la Policía de Puerto Rico, (Negociado de la Policía o parte peticionaria) mediante el recurso de *certiorari* de epígrafe solicitándonos que revisemos la *Resolución Interlocutoria* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 17 de septiembre de 2025, notificada el mismo día. Mediante este dictamen, el foro primario denegó la *Comparecencia Especial en Solicitud de Desestimación* presentada por la parte peticionaria.

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* y revocamos el dictamen recurrido.

### I.

El 16 de mayo de 2024, el Sr. Héctor Garriga Matos (señor Garriga Matos o el recurrido) instó una demanda sobre petición de ejecución de sentencia en contra del Gobierno de Puerto Rico y el

Negociado de la Policía de Puerto Rico.[1] En esta, se alegó que él ocupa el puesto de Policía y el 9 de mayo de 2005, el entonces Superintendente de la Policía, le notificó, mediante una carta, que lo separaba de su puesto. Esto, luego de concluir que el recurrido incurrió en una alegada violación al Reglamento de Personal de la Policía, imputándole la comisión de varias faltas graves.

Adujo que presentó una apelación ante la extinta Comisión Apelativa del Sistema de Administración de Recursos Humanos del Servicio Público (CASARH), la que determinó que la Policía de Puerto Rico actuó conforme a derecho al separarlo de su puesto. Determinó, además, que el señor Garriga Matos cometió las faltas graves imputadas y que su conducta negligente ameritaba la separación del puesto probatorio que ocupaba. Inconforme, el recurrido instó un recurso de revisión ante este Tribunal de Apelaciones.

Añadió que mediante la Sentencia dictada el 16 de junio de 2009, en el caso *Héctor Garriga Matos v. Policía de Puerto Rico*, KLRA200900304, este foro revisor revocó el dictamen de la CASARH. El hermano Panel razonó que la separación del puesto fue una ilegal, por lo que ordenó su restitución y el pago de los haberes dejados de recibir, desde su separación (9 de mayo de 2005) hasta la fecha en que se emitió la Sentencia.

Expuso que, aunque la Policía de Puerto Rico lo restituyó a su puesto, aún no ha cumplido con lo dictado en la Sentencia del Tribunal de Apelaciones, en particular, el pago de los haberes y beneficios dejados de percibir. Para lo que no existe excusa o eximente jurídico alguno que impida darle cumplimiento a dicho dictamen. Así, le solicitó al tribunal que ordene al Negociado de la Policía a cumplir con la Sentencia emitida por esta *Curia.*

---

[1] Véase, el Sistema Unificado de Manejo y Administración de Casos del TPI (SUMAC TPI), Entrada núm. 1.

El 23 de agosto de 2024, el Negociado de la Policía, sin someterse a la jurisdicción, presentó una *Comparecencia Especial en Solicitud de Desestimación*.[2] Mediante esta, planteó que, a tenor con la Regla 10.2 de las de Procedimiento Civil de Puerto Rico, *infra*, y otros principios jurídicos discutidos, no existe una controversia real, ya que la agencia cumplió con la Sentencia emitida por el Tribunal de Apelaciones. A los efectos, incluyó documentos que certifican que al recurrido: el 14 de julio de 2010 se le pagaron los sueldos dejados de percibir en el periodo del 22 de junio de 2005 al 3 de noviembre de 2009, descontándole los sueldos que devengó en la empresa privada; se le realizaron dos pagos luego de los descuentos; se le hicieron las correspondientes aportaciones a AEELA-Ahorro, Plan de Retiro, "Medicare" y "PR Worked In State Income Tax"; y se acreditaron las horas de vacaciones y de enfermedad que este tenía acumuladas al momento de ser destituido de la agencia. Por lo que, reafirmó que la controversia planteada en la demanda no es real y se convirtió en académica al momento que la agencia cumplió con pagarle al señor Garriga Matos los haberes y beneficios dejados de percibir.

El 30 de septiembre de 2024, el recurrido presentó su oposición al referido petitorio. Enfatizó que, aunque fue reinstalado en su puesto por el Negociado de la Policía:[3]

> [...] no surge de la documentación presentada como anejos de la solicitud de desestimación, que el pago de los salarios al compareciente haya incluido el pago de la licencia de vacaciones y de la licencia de enfermedad que también debían pagarse. Tampoco surge de la prueba acompañada que la parte demandada haya hecho los pagos correctos al plan de retiro y al plan de ahorro de la Asociación de Empleados del Estado Libre Asociado. Solo se acompañaron talonarios sin explicación alguna.

Asimismo, argumentó que el Negociado de la Policía no utilizó la fórmula establecida por el Tribunal Supremo en *Zambrana García*

---

[2] SUMAC TPI, Entrada núm. 13.
[3] SUMAC TPI, Entrada núm. 17, a la pág. 4.

*v. ELA et al.*, 204 DPR 328 (2020), para determinar el ingreso neto que recibió el empleado por cualquier otro trabajo obtenido y realizado en el periodo que estuvo cesanteado. Cuantía que se deduce del salario total que el empleado dejó de devengar y el remanente de ese cálculo, si alguno, es la cantidad que el patrono pagará al empleado restituido. Así pues, entiende que la agencia no ha cumplido con la Sentencia emitida por esta *Curia.*

El 10 de octubre de 2024, el Negociado de la Policía, nuevamente sin someterse a la jurisdicción, replicó a la antedicha oposición.[4] En esta reafirmó que no existe una controversia justiciable que resolver, ya que la agencia pagó los haberes dejados de percibir correctamente más no procede el pago de las licencias de vacaciones y de enfermedad del periodo de tiempo en que el señor Garriga Matos estuvo destituido. Referente al caso *Zambrana García v. ELA et al.,* expuso que la doctrina no revoca la normativa dictada en *Hernández v. Municipio de Aguadilla,* 154 DPR 199, (2001), ni se alega que el señor Garriga Matos haya tenido un segundo empleo mientras era empleado de la agencia para aplicar lo resuelto por el Tribunal Supremo. Además, se expuso que el recurrido citó la opinión disidente dictada en *Hernández v. Municipio de Aguadilla,* supra, para justificar su reclamo.

El señor Garriga Matos ripostó a dicho escrito planteando argumentos similares a los ya expresados en su oposición a la moción de desestimación instada por la parte peticionaria.

Transcurrido varios incidentes procesales, el TPI celebró una vista argumentativa para discutir las mociones. Surge de la *Minuta-Resolución* del 30 de abril de 2025[5], que escuchados los argumentos, el TPI manifestó tener duda "de cómo fue realizada la deducción de la licencia de vacaciones".

---

[4] SUMAC TPI, Entrada núm. 19.
[5] SUMAC TPI, Entrada núm. 25.

A base de lo ocurrido en dicha vista, el 9 de mayo de 2025, notificada el 12 de mayo posterior, el foro recurrido emitió la siguiente Orden:[6]

> En vista de la Sentencia emitida por el Honorable Tribunal de Apelaciones en el caso **KLRA200900304**, en la cual se ordenó la reinstalación del agente Héctor Garriga Matos y el pago de todos los haberes dejados de recibir desde su separación del servicio hasta su reinstalación, y considerando la alegación del demandado de que ha cumplido con dicha Sentencia, este Tribunal entiende necesario aclarar los extremos de dicho cumplimiento.
>
> Por tanto, se **ORDENA** al Negociado de la Policía de Puerto Rico que, dentro del término de **veinte (20) días** calendario a partir de la notificación de esta Orden:
>
> 1.    Presente ante este Tribunal un desglose detallado, completo y verificable de todos los pagos realizados al agente Héctor Garriga Matos en cumplimiento de la referida Sentencia, incluyendo:
>
> - Cantidades pagadas por concepto de salario base, o [sic] Cantidades pagadas por concepto de licencias acumuladas de vacaciones y enfermedad, o [sic] Cualquier otra compensación, beneficios o aportaciones patronales realizadas (incluyendo aportaciones al sistema de retiro y plan de ahorro),
>
> - Fechas en que se realizaron dichos pagos,
>
> - Evidencia documental que respalde cada una de las partidas (talonarios, certificaciones de nómina, informes financieros, etc.).
>
> 2.  Certifique bajo juramento que si los pagos realizados constituyen el 100% de los haberes que correspondían conforme a la Sentencia.

En cumplimiento con lo ordenado, el Negociado de la Policía presentó una moción en la que incluyó los siguientes anejos:[7]

> Certificación intitulada Análisis de Desglose de Sueldo y Descuentos de Nómina (por ley) (Anejo I);
> Talonario (Anejo II);
> Descuento por jurisprudencia (Anejo III);
> Certificación de Balance de Enfermedad (Anejo IV); y
> Certificación de Balance de Vacaciones (Anejo V).

Asimismo, explicó el contenido de cada uno de los referidos documentos, más reafirmó que, conforme a la interpretación del

---

[6] SUMAC TPI, Entrada núm. 27. Énfasis en el original.
[7] SUMAC TPI, Entrada núm. 28.

Tribunal Supremo, no procede un pago adicional de licencia de vacaciones, ni acumulación de estas por el término en que el recurrido estuvo cesanteado. Precisó, además, que, en el pago total de salario dejado de percibir desde el 22 de junio de 2005 hasta el 3 de noviembre de 2009, está incluido el período de vacaciones, según la jurisprudencia.

Añadió que "[e]n cuanto a la licencia de enfermedad, la Agencia procedió a acumular estas por los períodos del 22 de junio de 2005 hasta el 1 de noviembre de 2009. Ello, debido a que, distinto a la licencia de vacaciones, la cual está incluida en el pago de los salarios dejados de percibir, la licencia de enfermedad no se paga, sino que únicamente se acumula." (Nota al calce omitida)

Asimismo, expresó que *Zambrana García v. ELA et al.*, supra, se resolvió en el 2020, diez años después de que la agencia cumplió con la Sentencia del Tribunal de Apelaciones, la cual ordenó restitución del demandante y el pago de salarios y haberes. "El cómputo delineado por el Tribunal Supremo de Puerto Rico en Zambrana García, supra, no solo es inaplicable al caso de epígrafe, sino que su aplicación es prospectiva, razón por la cual no debe aplicarse retroactivamente a este caso."

El 13 de agosto de 2025, el señor Garriga Matos instó una *Moción para Reiterar Oposición a Desestimación* en la que reiteró que:[8]

> El Estado ha aplicado un descuento automático entre lo que el demandante generó en otro empleo y lo que hubiera devengado en su puesto, sin realizar el análisis detallado que exige la jurisprudencia vigente. Tal proceder contraviene lo resuelto en Zambrana García v. ELA et al., 204 DPR 328 (2020), donde el Tribunal Supremo aclaró que el cálculo requiere un examen minucioso del concepto de ingreso neto y de las horas efectivamente sustituidas, no una simple resta automática.
> […]
>
> Los pagos realizados ($28,233.75, según surge de los propios anejos de la parte demandada) no

---

[8] SUMAC TPI, Entrada núm. 33.

> representan la totalidad adeudada. La determinación de la suma correcta requiere la contratación de un perito que evalúe, año por año, los haberes dejados de percibir, las licencias acumuladas, los aportes a planes de retiro y ahorro, y cualquier otro concepto ordenado por el Tribunal de Apelaciones, para entonces calcular el ingreso neto que obtuvo el señor Garriga y que sea eso lo que se le reste para aplicar la jurisprudencia.

Analizados los antedichos escritos, el 17 de septiembre de 2025, el foro primario *a quo* emitió y notificó la *Resolución Interlocutoria*[9] recurrida en la que declaró *No Ha Lugar* a la *Moción de Desestimación* instada por la parte peticionaria.

Inconforme, el 2 de octubre de 2025, la parte peticionaria presentó una oportuna moción de reconsideración a la que se opuso el señor Garriga Matos. Destacamos que en la oposición el recurrido expresó, en parte, lo siguiente:[10]

> Asimismo, el Estado pretende invalidar la aplicación del precedente Zambrana García v. Estado Libre Asociado de Puerto Rico, 204 DPR 328 (2020), alegando que implicaría una aplicación retroactiva de derecho. Tal argumento es incorrecto, pues Zambrana no creó una nueva norma jurídica, sino que interpretó y precisó la doctrina previamente establecida en Hernández v. Municipio de Aguadilla, 154 DPR 199 (2001). Por tanto, su aplicación no constituye retroactividad, sino una correcta interpretación de una norma vigente desde el año 2001.

> El Estado insiste en que Zambrana García no es de aplicación al caso de epígrafe y que su aplicación sería retroactiva. Tal afirmación ignora que la decisión de Zambrana García no revocó ni sustituyó la norma de Hernández v. Municipio de Aguadilla, sino que la interpretó y aclaró.

> En Hernández v. Municipio de Aguadilla, supra, el Tribunal Supremo estableció que el patrono público podía deducir del pago de los salarios dejados de percibir aquellos ingresos que sustituyeran los que el empleado habría ganado si no hubiera sido despedido. No obstante, el caso no definió con precisión qué debía entenderse por "ingreso neto" ni estableció la fórmula para determinarlo.

> Precisamente, el Tribunal Supremo en Zambrana García, supra, reconoció esa laguna e interpretó la norma para evitar su aplicación automática y errónea. El propio Tribunal expresó que su decisión clarificaba la manera correcta de calcular el ingreso neto, explicando que: "El propósito de calcular el ingreso neto es cumplir con que el remedio no sea punitivo, sino reparador... De esa forma, solo se descuentan de la compensación aquellos ingresos que sustituyeron los

---

[9] SUMAC TPI, Entrada núm. 38.
[10] SUMAC TPI, Entrada núm. 43.

que el empleado habría percibido de su antiguo empleo si no hubiese sido cesanteado." (Zambrana García, pág. 337).

Es decir, Zambrana no creó un nuevo remedio, sino que precisó cómo debía aplicarse el ya existente desde Hernández, lo que significa que no se trata de una norma nueva ni de aplicación prospectiva, sino de una interpretación jurisprudencial obligatoria que rige desde la fecha de la norma original.

De igual manera, este se reafirmó en que "2. Las certificaciones sometidas generan inconsistencias y dudas. No se explica si las licencias de vacaciones y enfermedad fueron correctamente restituidas; tampoco si las aportaciones al plan de retiro y al ahorro (AEELA) fueron hechas en su totalidad.; 3. El pago efectuado en 2009 y 2010 no es evidencia de cumplimiento. De los documentos presentados no surge un desglose pericial que permita determinar que las cantidades pagadas ($28,233.75, entre otros conceptos) correspondan a lo realmente adeudado según la Sentencia."

El 9 de diciembre de 2025, notificada el día siguiente, el TPI emitió una Resolución Interlocutoria denegando el pedido.

Todavía en desacuerdo, la parte peticionaria acude ante esta *Curia* mediante el recurso de *certiorari* de epígrafe imputándole al foro primario haber incurrido en los siguientes errores:

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA SOLICITUD DE DESESTIMACIÓN PRESENTADA POR EL ESTADO CONTRA LA DEMANDA DE TÍTULO, A PESAR DE QUE SE TRATA DE UNA CAUSA DE ACCIÓN INEXISTENTE, POR LO QUE, DE SU FAZ, NO ES PLAUSIBLE, EN HECHOS, NI EN DERECHO, Y ATENTA CONTRA EL PRINCIPIO DE CERTEZA Y FINALIDAD QUE RIGE NUESTRO ORDENAMIENTO JURÍDICO.

ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DENEGAR LA SOLICITUD DE DESESTIMACIÓN PRESENTADA POR EL ESTADO, A PESAR DE LA EVIDENTE IMPROCEDENCIA DEL RECLAMO DEL RECURRIDO AL CUESTIONAR EL CUMPLIMIENTO DE UNA SENTENCIA QUE FUE SATISFECHA EN SU TOTALIDAD HACE MÁS DE QUINCE AÑOS Y CONFORME CON EL DERECHO VIGENTE EN ESE MOMENTO, SIN REPARO U

OBJECIÓN ALGUNA POR PARTE DEL SEÑOR GARRIGA MATOS.

El 16 de enero de 2026, emitimos una *Resolución* concediendo a la parte recurrida hasta el 26 de enero de 2026 para expresarse. Ese mismo día, se cumplió con lo ordenado, así nos damos por cumplidos y; a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como el derecho aplicable, procedemos a resolver.

**II.**

**Auto de *Certiorari***

El recurso de *certiorari* es el vehículo procesal discrecional disponible para que un tribunal apelativo revise las resoluciones y órdenes interlocutorias de un tribunal de inferior jerarquía. Regla 52.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1; *García v. Padró*, 165 DPR 324, 334 (2005). Todo recurso de *certiorari* presentado ante este foro apelativo deberá ser examinado primeramente al palio de la Regla 52.1 de las de Procedimiento Civil, *supra*. Dicha regla limita la autoridad y el alcance de la facultad revisora de este foro apelativo sobre órdenes y resoluciones dictadas por el foro de primera instancia, revisables mediante el recurso de *certiorari*. La referida norma dispone como sigue:

> Todo procedimiento de apelación, certiorari, certificación, y cualquier otro procedimiento para revisar sentencias y resoluciones se tramitará de acuerdo con la ley aplicable, estas reglas y las reglas que adopte el Tribunal Supremo de Puerto Rico.
> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, **solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo.**
> No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando **se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.**

> Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.
>
> Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 de este apéndice sobre los errores no perjudiciales. Regla 52.1 de Procedimiento Civil, supra. [Énfasis Nuestro].

Por tanto, el asunto que se nos plantea en el recurso de *certiorari* de epígrafe deberá tener cabida bajo alguna de las materias reconocidas en la Regla 52.1 de las de Procedimiento Civil, *supra*. Ello, debido a que el mandato de la mencionada regla dispone expresamente que solamente será expedido el auto de *certiorari* para la revisión de remedios provisionales, interdictos, denegatoria de una moción de carácter dispositivo, admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia y en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia.

Así, pues, para determinar si debemos expedir un auto de *certiorari* debemos determinar primeramente si el asunto que se trae ante nuestra consideración versa sobre alguna de las materias especificadas en la Regla 52.1 de las de Procedimiento Civil, *supra*. Sin embargo, aun cuando el asunto esté contemplado por dicha regla, para determinar si procede la expedición de un recurso y poder ejercer sabiamente nuestra facultad discrecional, debemos acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, según enmendado, 2025 TSPR 141, pág. 63, 216 DPR __ (2025), que dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Estos criterios sirven de guía para poder determinar, de manera sabia y prudente, si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra el caso. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). Es decir, que el examen que emplea el foro apelativo no se da en el vacío ni en ausencia de otros parámetros. *800 Ponce de León v. AIG*, 205 DPR 163, 176 (2020).

De otra parte, el ejercicio de las facultades del Tribunal de Primera Instancia merece nuestra deferencia, por tanto, solo intervendremos con el ejercicio de dicha discreción en aquellas instancias que se demuestre que el foro recurrido: (1) actuó con prejuicio o parcialidad; (2) incurrió en un craso abuso de discreción; o (3) se equivocó en la interpretación de cualquier norma procesal o de derecho sustantivo. *BBPR v. SLG Gómez-López*, 213 DPR 314, 334-335 (2023); *Ramos v. Wal-Mart*, 165 DPR 510, 523 (2006); *Rivera Durán v. Banco Popular de Puerto Rico*, 152 DPR 140,155 (2000).

**Regla 10.2 de las de Procedimiento Civil**

Una persona contra quien se haya presentado una reclamación judicial puede solicitar su desestimación cuando, de la faz de las alegaciones de la demanda, surja que alguna defensa

afirmativa puede derrotar la pretensión del demandante. *Conde Cruz v. Resto Rodríguez et al*, 205 DPR 1043, 1077-1078 (2020); *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 701 (2012).

A tales efectos, la Regla 10.2 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 10.2, dispone lo siguiente:

> Toda defensa de hechos o de derecho contra una reclamación se expondrá en la alegación responsiva excepto que, a opción de la parte que alega, las siguientes defensas pueden hacerse mediante una moción debidamente fundamentada:
>
> (1) Falta de jurisdicción sobre la materia;
>
> (2) Falta de jurisdicción sobre la persona;
>
> (3) Insuficiencia del emplazamiento;
>
> (4) Insuficiencia del diligenciamiento del emplazamiento;
>
> (5) Dejar de exponer una reclamación que justifique la concesión de un remedio;
>
> (6) Dejar de acumular una parte indispensable;
>
> [...] Si en una moción en que se formula la defensa (5) se exponen materias no contenidas en la alegación impugnada, y éstas no son excluidas por el tribunal, la moción deberá ser considerada como una solicitud de sentencia sumaria y estará sujeta a todos los trámites ulteriores provistos en la Regla 36 hasta su resolución final, y todas las partes deberán tener una oportunidad razonable de presentar toda materia pertinente a tal moción bajo dicha regla.

La citada regla establece los fundamentos para que una parte en un pleito pueda solicitar la desestimación de una demanda en su contra, mediante la presentación de una moción fundamentada en cualesquiera de los motivos en ella expuestos. *El Día, Inc. v. Mun. de Guaynabo*, 187 DPR 811, 820-821 (2013); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 935 (2011). En lo pertinente, la Regla 10.2(5) de las de Procedimiento Civil, *supra*, dispone que el demandado puede fundamentar su solicitud en que la demanda no expone "una reclamación que justifique la concesión de un remedio". En tales casos, la desestimación solicitada se dirige a los méritos de la controversia y no a los aspectos procesales. *Montañez v. Hosp. Metropolitano*, 157 DPR 96, 104 (2002).

Ahora bien, para que proceda esta moción "tiene que demostrarse de forma certera en ella que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiese probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor." *BPPR v. Cable Media,* 2025 TSPR 1, 215 DPR ___ (2025); *Rivera San Feliz et al. v. Jta. Dir. First Bank,* 193 DPR 38, 49 (2015); *Ortiz Matías et al. v. Mora Development,* 187 DPR 649, 654 (2013).

Asimismo, ante una moción de desestimación, bajo la antedicha norma, la demanda y sus alegaciones han de ser consideradas por el tribunal lo más liberalmente posible a favor de la parte demandante. El tribunal que evalúa la moción de desestimación debe concederle a la parte demandante el beneficio de toda inferencia posible que pueda surgir de la demanda.

Por su parte, nos explica el tratadista Cuevas Segarra que:

> Esta regla permite al demandado solicitar que se desestime la demanda en su contra, cuando entre otras razones ésta "no expone una reclamación que justifique la concesión de un remedio". A los fines de disponer de una moción de desestimación, el Tribunal está obligado a dar por ciertas y buenas todas las alegaciones fácticas de la demanda presentada. **El promovente tiene que demostrar que presumiendo que lo allí expuesto es cierto, la demanda no expone una reclamación que justifique la concesión de un remedio**. Esta doctrina se aplica solamente a hechos bien alegados y expresados de manera clara y concluyente, que de su faz no den margen a dudas. La demanda no deberá ser desestimada a menos que se desprenda con toda certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación No se determinará si el demandante prevalecerá finalmente en el pleito, sino si el demandante tiene o no derecho a ofrecer prueba que justifique su reclamación, asumiendo como ciertos los hechos bien alegados en la demanda.
> …
> La controversia no es si el demandante va a finalmente prevalecer, sino, si tiene derecho a ofrecer prueba que justifique su reclamación, asumiendo como ciertos los hechos bien alegados en la demanda.

José Cuevas Segarra, *Tratado de Derecho Procesal Civil,* Publicaciones JTS, 2000, Tomo I, pág. 271 citando a *Davis y Monroe County Board of Ed.,* 143 LE 2d 839 (1999). (Énfasis nuestro)

Por ello, al evaluar una moción al amparo de la Regla 10.2 de las de Procedimiento Civil, *supra*, cuando el promovente alega falta de parte indispensable, falta de jurisdicción o dejar de exponer una reclamación que justifique un remedio, ni el tribunal ni la parte demandada ponen en duda, para efectos de esa moción, los hechos alegados en la demanda porque se ataca por un vicio intrínseco de esta o del proceso seguido. *Roldán v. Lutrón, S.M., Inc.*, 151 DPR 883, 890 (2000).

En fin, la desestimación de la reclamación judicial procede cuando surja de los hechos bien alegados en la demanda que la parte demandante no tiene derecho a remedio alguno. *Torres, Torres v. Torres et al.*, 179 DPR 481, 501 (2010). Para alcanzar dicha conclusión, es necesario que el tribunal considere ciertas todas las alegaciones fácticas que hayan sido aseveradas de manera clara en la demanda. *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank*, 193 DPR 38, 49 (2015); *Colón v. Lotería*, 167 DPR 625, 649 (2006).

### III.

La parte peticionaria señaló que erró el TPI al denegar la solicitud de desestimación presentada por el Negociado de la Policía contra la demanda de título, a pesar de que se trata de una causa de acción inexistente, por lo que, de su faz, no es plausible, en hechos, ni en derecho, y atenta contra el principio de certeza y finalidad que rige nuestro ordenamiento jurídico. Asimismo, planteó que incidió el foro primario al denegar la solicitud de desestimación presentada por la agencia, a pesar de la evidente improcedencia del reclamo del recurrido al cuestionar el cumplimiento de una sentencia que fue satisfecha en su totalidad hace más de quince años y conforme con el derecho vigente en ese momento, sin reparo u objeción alguna por parte del señor Garriga Matos. Por estar relacionados los señalamientos de error, los discutiremos en conjunto.

Advertimos que la controversia planteada está incluida en las instancias que esta *Curia* puede atender, al palio de la Regla 52.1, *supra,* por ser una denegatoria de una moción de carácter dispositivo y, además, constituye una situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Asimismo, están presentes criterios de nuestra Regla 40, *supra,* por lo que determinamos expedir el recurso solicitado, en especial, por ser el momento más propicio para atenderlo.

De entrada, y respecto a la discusión de los errores imputados resulta importante apuntalar, que el señor Garriga Matos no ha presentado ante el TPI ni ante nuestra consideración un cómputo aritmético que refute las cuantías relativas a los haberes y beneficios que la agencia le pagó. Más bien, este basa su inconformidad con el monto recibido en la doctrina establecida por el Tribunal Supremo en *Zambrana García v. ELA et al.,* supra, y que necesita prueba pericial para determinar la cuantía correcta de las partidas reclamadas. Por lo que, no nos ha puesto en condición para determinar si las cantidades pagadas a su favor como resultado de su reinstalación al puesto son correctas o no. Por el contrario, el Negociado de la Policía, en cumplimiento con las órdenes del TPI, ha presentado múltiples documentos con explicaciones detalladas de los cómputos utilizados para calcular los salarios, descuentos, aportaciones y beneficios pagados al señor Garriga Matos. Los que reafirmamos nunca han sido controvertidos por el recurrido. Más aun, en el 2010 este aceptó los pagos sin reserva ni los impugnó por entender que eran improcedentes.

Ahora bien, recordemos que el fin último de una sentencia a favor de una parte demandante que ha prevalecido en su reclamación por un despido ilegal es que, al momento de la reinstalación ordenada, regrese a su empleo y perciba tanto el sueldo como todos aquellos beneficios que pudo haber percibido de

no haberse decretado su cesantía. Es decir, lo que se busca es colocar al empleado despedido ilegalmente en la misma posición en que hubiese estado de no haber sido despedido. *Zambrana García v. ELA*, supra, a la pág. 337; *Hernández v. Municipio de Aguadilla*, supra, a la pág. 209.

Así, por ejemplo, la retribución en que consiste el salario se estima como manera de pago y se recibe en ese concepto. No obstante, la acumulación de días por enfermedad o vacaciones se basará en las horas trabajadas, lo que, por sí solo, no convierte esos beneficios en salario. *Zayas Rodríguez y Otros v. PRTC*, 195 DPR 720, 735-736 (2016).

Por otro lado, respecto a la aplicabilidad de la doctrina establecida por el Tribunal Supremo en *Zambrana García v. ELA et al.*, supra, subrayamos que en este caso el más alto foro:

> [...] **tuvo la oportunidad de definir y <u>desarrollar la fórmula matemática</u> para determinar cuál es el ingreso neto que debe ser deducido de la compensación por concepto de haberes dejados de percibir a los que tiene derecho un empleado público que ha sido cesanteado ilegalmente**. **Allí, definimos el ingreso neto** como "el salario que devengó el empleado despedido por trabajos obtenidos y realizados durante la cesantía correspondiente a la cantidad de horas que habría trabajado para el patrono si no hubiera sido cesanteado, menos los gastos en que incurrió para devengarlo"... (Énfasis nuestro)

Esto según descrito posteriormente por la más alta *Curia* en *Torres Rivera v. Econo Rial, Inc.*, 208 DPR 346, 360 (2021). Por tanto, en el 2010 no existía dicha fórmula y el pago se realizó conforme al derecho vigente en ese entonces. Como bien arguye la parte peticionaria en el escrito ante nuestra consideración, para el momento en que se satisfizo la totalidad de la Sentencia emitida por un panel hermano de este tribunal, la normativa a ser utilizada en el cómputo del pago de los haberes dejados de percibir era *Hernández v. Mun. de Aguadilla*, supra. Allí se decretó que "en aquellos casos en que un empleado público despedido ilegalmente haya recibido ingresos, por concepto de trabajos obtenidos y

realizados durante el periodo que estuvo cesanteado, el patrono podrá deducir dichos ingresos de la cuantía a otorgarse por concepto de salarios dejados de percibir, independientemente de cuál es la fuente de donde provienen los mismos." *Íd.*, a la pág. 209.

En este sentido, pretender aplicar retroactivamente al 2010 esta nueva doctrina, **establecida por vez primera en el 2020**, es una invitación que no acogemos. Esto, debido a que esta demanda de ejecución de sentencia, **instada luego de transcurridos catorce (14) años de haberse emitido y aceptado el pago**, es un intento, en parte, de concederle efecto retroactivo a una nueva norma jurisprudencial. Por tanto, requiere acentuar que la decisión de un tribunal solo debe tener efecto prospectivo si: (1) **la decisión establece un nuevo principio de derecho ya sea porque revoca algún precedente o se decide un "issue"" por primera vez**; (2) la aplicación retroactiva de la norma adelanta o retarda su operación y el efecto que ésta puede tener en la Administración de la Justicia; (3) la inequidad que se impondría por la aplicación retroactiva de la decisión del Tribunal. Reynaldo Calderón Jiménez, *Retroactividad o Prospectividad de las Decisiones de los Tribunales*, 53 Rev. C. Abo. U.P.R. 107, 131 (1992).

En todo caso, el efecto prospectivo y no retroactivo de una decisión estará basado en una actitud de mesura judicial tendente a evitar dislocaciones violentas en un sistema económico que se ha estructurado confiando en un estado de la jurisprudencia. *Monclova v. Financial Credit Corp.*, 83 DPR 770, 786-787 (1961).

El Tribunal Supremo validó este enfoque al manifestar que una determinación judicial sólo será prospectiva y no retroactiva cuando, en un caso particular, surge una nueva norma que no era fácilmente anticipable, y cuya inesperada aplicación en el caso podía ocasionar resultados sustancialmente injustos para la parte que

confío en la norma anterior que quedó desplazada por la nueva norma. *Flores Concepción v. Taíno Motors,* 168 DPR 504 (2006).[11]

Además, ha expresado el Tribunal Supremo que por **consideraciones de política pública y de orden social**, se pueden limitar la aplicación de las determinaciones para que, por ejemplo, no se afecten aquellas sentencias que hayan advenido finales y firmes. *Bco. Santander v. Correa García,* 196 DPR 452 (2016). Esto, máxime cuando, a nuestro entender, la aplicación retroactiva de esta nueva doctrina podría tener un impacto sustancial en los fondos del Gobierno.

Así pues, concluimos que, a tenor con el estándar de revisión de la Regla 10.2 de las de Procedimiento Civil, *supra,* y tomando como ciertas las alegaciones contenidas en la demanda, e interpretando la misma lo más liberalmente a favor del señor Garriga Matos, entendemos que el TPI erró en su determinación. Es decir, el recurrido no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiese probar en apoyo a su reclamación. Recalcamos, que el señor Garriga Matos solo ha reafirmado en su disputa, inclusive ante nuestra consideración, que necesita prueba pericial para determinar el monto real adeudado y para aplicar la normativa establecida en *Zambrana García v. ELA et al.,* supra. No obstante, falla crasamente en enunciar fundamentos concretos en derecho del por qué este proceder propuesto es necesario. Más aun, basa sus reclamos en especulaciones, ya que, como discutimos, nunca ha presentado cálculos específicos dirigidos a refutar las declaraciones y documentos del Negociado de la Policía que acreditan que cumplió a cabalidad con todos los pagos de los

---

[11] Cita de la Opinión de Conformidad en parte y Disidente en parte emitida por el Juez Asociado Fuster Berlingeri, *Flores Concepción v. Taíno Motors,* 168 DPR 504, 523-527 (2006).

salarios, beneficios y aportaciones; así como deducciones y acumulación de licencias.

Relativo a lo antedicho, el Tribunal Supremo ha reiterado que, cuando se presente una moción de desestimación al amparo de la Regla 10.2(5) de las de Procedimiento Civil, *supra*, el tribunal debe considerar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de éste, la demanda es suficiente para constituir una reclamación válida." *Morales et al. v. Asoc. Propietarios*, 214 DPR 284, 291 (2024), citando a *Aut. Tierras v. Moreno & Ruiz Dev. Corp.*, 174 DPR 409, 429 (2008).

De igual manera, como bien se establece en el ordenamiento jurídico, la demanda en sí misma tiene que alegar suficientes hechos que demuestren que es factible que se tenga derecho a un remedio. Por lo que, los hechos deben contener información específica, **toda vez que la especulación no es suficiente para sostener una causa de acción**. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-679 (2009).

En fin, el foro primario incurrió en los errores imputados.

## IV.

Por los fundamentos antes expuestos, se expide el recurso de *certiorari*, y se revoca el dictamen recurrido. En consecuencia, se desestima la demanda instada por el señor Garriga Matos.

Notifíquese inmediatamente.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones